UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**J. LYNN WILDE,**

      **Plaintiff,**

      v.                                  Case No. 06-C-1009

**BENEFICIAL INTERNATIONAL, INC.,**

      **Defendant.**

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER CASE TO THE DISTRICT OF UTAH

On August 15, 2006, J. Lynn Wilde ("Wilde") filed a complaint in Brown County Circuit Court alleging breach of contract regarding a promissory note executed by Beneficial International, Inc. ("Beneficial"). Based upon the diversity of the parties and the amount in controversy, Beneficial removed the action to federal court, and the case was reassigned to this court upon the parties consenting to the full jurisdiction of a magistrate judge.

On October 3, 2006, Beneficial filed its answer to the complaint along with a counterclaim against Wilde and a third-party complaint against Christopher Wilde and The Body Detox (collectively "Body Detox") alleging ten separate causes of action. Wilde subsequently moved to dismiss the counterclaim and third-party complaint on grounds the claims were duplicative of a prior action filed by Beneficial against Wilde and Body Detox in United States District Court for the District of Utah (the "Utah action"), and because Body Detox has no bearing on the promissory note claim. Beneficial responded with its own motion to dismiss Wilde's complaint on the promissory note or, alternatively, to transfer the action to the District of Utah pursuant to 28 U.S.C.

§ 1404(a) on the ground that the claim is compulsory to the Utah action. The pleadings on the motions are now closed and the matter is ready for resolution.

## FACTUAL SUMMARY

Beneficial is a wholesaler of health and beauty aid products with its principal place of business in Salt Lake City, Utah. (Countercl. Docket No. 6 at 2, ¶¶ 1, 7.) Wilde was employed at Beneficial from 1984 until his resignation, effective September 13, 2003. (Countercl. Docket No. 6 at 3-4, ¶ 12, 21.) During that time, Wilde served as president and a member of the board of directors and had access to Beneficial's proprietary information and trade secrets. (Kordus Decl. Docket No. 9-2 at 3, ¶ 16.) Upon his resignation, Wilde was offered a compensation package including a Noncompetition and Nondisclosure Agreement ("NDA"), a Consulting Agreement, and a Stock Redemption Agreement with the related promissory note that is the subject of this litigation. (Kordus Decl. Docket No. 9-2 at 4-5, ¶ 22.) All four agreements select Utah law as the governing law. (Kordus Decl. Docket No. 9-2 at 39, 44, 49, 52 (NDA, Consulting Agreement, Stock Redemption Agreement and Promissory Note attached as Exs. A, C-E.)

According to the terms of the NDA, in exchange for Wilde's promise to not disclose any of Beneficial's proprietary information, inventions, or business ideas and to not compete with Beneficial, Wilde would receive compensation in the amount of $115,563.15, payable in 24 equal monthly installments. (Kordus Decl. Docket No. 9-2 at 6-7, ¶¶ 27-33; Docket No. 9-2 at 35-39.) Under the Consulting Agreement, Wilde would serve in a consulting capacity for Beneficial for a period of one year in exchange for $57,768.60. (Kordus Decl. Docket No. 9-2 at 5, ¶ 23; Docket No. 9-2 at 44-45.) Wilde signed both agreements on September 15, 2003. (Kordus Decl. Docket No. 9-2 at 4, ¶¶ 18, 22.)

Under the Stock Redemption Agreement, Beneficial was obligated to purchase 5,784,190 shares of its stock from Wilde for a total of $441,014.39, payable as $100,000 in cash, $30,000 in

product credit, and the return of an outstanding promissory note in the name of Jeffery Wilde as $1658.02 against the purchase price. (Kordus Decl. Docket No. 9-2 at 4-5, ¶¶ 22, 24; Docket No. 9-2 at 47-49.) The promissory note at issue in this litigation was issued for the remaining balance of $309,356.37, bearing interest at four and three-quarters percent per year and payable in monthly installments of $3,397.43 starting October 2005 and continuing until September 2015. (Kordus Decl. Docket No. 9-2 at 5, ¶ 25; Docket No. 9-2 at 51-52.)

The Body Detox sells health care and beauty aid products and was incorporated in Nevada on January 26, 2006. (Kordus Decl. Docket No. 9-2 at 9, ¶¶ 49, 51.) Wilde is the president and director of The Body Detox. (Countercl. Docket No. 6 at 2, ¶ 3.) Beneficial alleges that The Body Detox markets at least nine products that are identical or nearly identical to products marketed by Beneficial. (Countercl. Docket No. 6 at 12-13, ¶ 69.) Accordingly, Beneficial filed a complaint against Wilde and Body Detox in the United States District Court for the District of Utah on June 9, 2006, which sets forth nine separate causes of action alleging, inter alia, breach of contract, civil conspiracy, and violation of the Utah Uniform Trade Secrets Act. (Ostrow Decl. Docket No. 23-4 at 7-10, ¶¶ 81-98, Docket No. 23-5 at 2-27, ¶¶ 99-148, Docket No. 23-6 at 2, ¶ 149.) The eighth cause of action—breach of the covenant of good faith and fair dealing—requests, as a prayer for relief, termination of the Stock Redemption Agreement and its associated promissory note. (Ostrow Decl. Docket No. 23-5 at 10, ¶ 142.) Beneficial later amended its complaint on August 16, 2006 to include a tenth cause of action: breach of contract against Wilde.

Instead of filing a counterclaim for Beneficial's default on the promissory note or asserting Beneficial's obligation to pay on the promissory note as an affirmative defense, Wilde's Wisconsin attorney sent a letter to Beneficial on July 15, 2006 demanding payment in full and threatening legal action if payment was not received. (Ostrow Decl. Docket No. 23-8 at 2 (Letter from Attorney Liebmann to Beneficial); Ostrow Decl. Docket No. 23-2 (Copy of the Docket Sheet for

the Utah case as of October 23, 2006).) When Beneficial failed to resume payment on the promissory note, Wilde filed the current breach of contract action in Wisconsin.

## ANALYSIS

Beneficial argues that Wilde's claim should either be dismissed or transferred because it is a compulsory counterclaim to the action already pending in Utah due to the promissory note's inclusion in the interdependent four-part agreement. Wilde asserts that his claim is merely a permissive counterclaim to the Utah action because the four agreements are not interdependent; Wilde further contends that Beneficial's counterclaim and third-party complaint should be dismissed because they are duplicative of the action already filed by Beneficial in Utah. The determination common to the parties' competing motions is the nature of a compulsory counterclaim.

A counterclaim is compulsory when it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a). To determine whether an action "arises out of the same transaction or occurrence," the Seventh Circuit uses a logical relationship test. Burlington N. R.R. Co. v. Strong, 907 F.2d 707, 711 (7th Cir. 1990); Valencia v. Anderson Bros. Ford, 617 F.2d 1278, 1291 (7th Cir. 1980), *rev'd on other grounds*, 452 U.S. 205 (1981); Warshawsky & Co. v. Arcata Nat'l Corp., 552 F.2d 1257, 1261 (7th Cir. 1977); Inforizons, Inc. v. VED Software Servs., Inc., 204 F.R.D. 116, 119 (N.D. Ill. 2001).

The logical relationship test first emerged in the Supreme Court case Moore v. New York Cotton Exchange, 270 U.S. 593 (1926). In that case, the plaintiff sued the defendant for antitrust violations arising from the defendant's refusal to supply price quotations; the defendant counterclaimed that the plaintiff was stealing the quotations. Id. at 602-03. In determining whether the defendant's counterclaim evolved from the same transaction as the plaintiff's claim, Justice Sutherland declared, "[t]ransaction is a word of flexible meaning. It may comprehend a series of

many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id at 610 (internal quotations omitted); see also Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n, 804 F.2d 390, 396 (7th Cir. 1986) (quoting Warshawsky, 552 F.2d at 1261); Valencia, 617 F.2d at 1291.

In practice, the logical relationship test varies slightly by circuit; the Seventh Circuit has developed a narrow version "that perhaps asks little more than whether the plaintiff's claims would be barred by res judicata." Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc., 31 F.3d 445, 448 (7th Cir. 1994). This Circuit does not follow a rigid test to determine whether a claim is logically related to a pending action in another circuit. See Valencia, 617 F.2d at 1292. Instead, "[a] court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." Burlington, 907 F.2d. at 711.

Both Wilde and Beneficial rely on Inforizons to support their respective motions for dismissal. (Pl.'s Br. Mot. Dismiss 3; Def.'s Br. Mot. Dismiss 2.) Clearly, one party is misguided. The case does support Beneficial's argument that Wilde's claim should not proceed in this forum. In Inforizons, an Illinois corporation ("Inforizons") commenced a breach of contract action against a Michigan corporation ("VED") in Illinois. 204 F.R.D. at 118. VED moved to dismiss the complaint alleging that the claim should have been brought as a compulsory counterclaim to VED's breach of contract action against Inforizons already pending in Michigan. Id. The Illinois court held that the action before it was a compulsory counterclaim to the Michigan litigation because it involved "the same parties, facts, law, and evidence as the Michigan litigation." Id. at 119.

Wilde, in support of his motion to dismiss Beneficial's counterclaim and third-party complaint, also refers to Inforizons, but as authority for the argument that Beneficial's claims are duplicative of those brought in the Utah action. (Pl.'s Br. Mot. Dismiss Docket No. 8 at 3.) This is

5

also true. This means that the action in this district involves both a "compulsory counterclaim" and a "duplicative claim." When faced with a duplicative action, the Inforizons court opted for judicial economy.

> Rule 13(a) does not expressly bar a party from asserting an independent action that it could have brought as a compulsory counterclaim in a pending action. Nevertheless, in the interests of judicial administration, a court will generally either stay its own proceedings or dismiss an action once it learns that the action before it involves a claim that is properly characterized as a compulsory counterclaim in another pending federal action or is duplicative of parallel action already pending in another federal court.

Inforizons, 204 F.R.D. at 118. The Inforizons court did not dismiss, but stayed its proceedings pending disposition in Michigan. The court also stated that "the purpose of Rule 13(a) is judicial economy: 'to avoid a multiplicity of actions by resolving in a single suit all disputes that ensue from a common factual background.'" 204 F.R.D. at 119 (quoting In re Price, 42 F.3d 1068, 1073 (7th Cir. 1994)).

Not only does this court believe Wilde's claims are compulsory, it appears that his brief supports such a conclusion. In an effort to show that Beneficial's counterclaim and third-party complaint are duplicative of the Utah action, Wilde explains exactly why Utah is the best forum for this dispute. The net result of this argument is to further persuade the court that Wilde's own claim belongs in Utah. Footnote 2 is especially revealing. It states:

> To determine whether special circumstances exist such that the plaintiff in the second-filed case has rebutted the presumption in favor of dismissal, the Court should consider:
>
>> (1) the adequacy of the relief available in the alternative forum;
>> (2) the promotion of judicial efficiency;
>> (3) the identity of the parties and the issues in the two actions;
>> (4) the likelihood of prompt resolution in the alternative forum;
>> (5) the convenience of the parties, counsel and witnesses; and
>> (6) the possibility of prejudice to any party.

6

> United States v. Costello, 809 F. Supp. 56, 58 (E.D. Wis. 1992) (citing Unilease Computer Corp. v. Major Computer Inc., 126 F.R.D. 490, 493 (S.D.N.Y. 1989). Analysis of these six factors makes clear that no special circumstances exist in this case. The United States District Court for the District of Utah can afford the same relief that this Court can. Furthermore, the Utah court has already heard (and denied) Beneficial's motion for a preliminary injunction. The parties to the Utah action have exchanged initial disclosures, and the court has set a trial date. Judicial efficiency and the prompt resolution of Beneficial's claims therefore militate in favor of the Utah forum that Beneficial chose. So, too, does the convenience of the parties, counsel, and witnesses. Beneficial is headquartered in Salt Lake City, Utah. Body Detox is headquartered in neighboring Nevada, where Christopher Wilde lives. Lynn Wilde is the only party who resides in Wisconsin. Beneficial chose Utah counsel when it decided to file suit against the Wildes and Body Detox in Utah; the Wildes and Body Detox have also retained counsel to defend them in Utah. Finally, the parties and issues involve[d] in the two case are identical, and no possibility of prejudice to Beneficial arises from requiring Beneficial to litigate its claims in the forum it chose.

(Pl.'s Br. Mot. Dismiss Docket No. 8 at 3-4, n. 2 (internal citations to the record omitted).) Although intended to serve as reasons to dismiss Beneficial's claim, each factor supports the conclusion that Wilde's claim is a compulsory counterclaim in the Utah action.

Nevertheless, Wilde argues that his claim is not compulsory to the Utah action because the three agreements and the promissory note are not interrelated (as Beneficial claims) and, therefore, do not arise from the same agreement. (Pl.'s Resp. Docket No. 28 at 6-7.) This argument is unpersuasive. "[W]hether a particular counterclaim should be considered compulsory depends not so much on the immediacy of its connection with the plaintiff's claim as upon its logical relationship to that claim…. This test is to be applied flexibly in order to further the policies of the federal rules in general and Rule 13(a) in particular." Valencia, 617 F.2d at 1291 (citing Warshawsky, 552 F.2d at 1261-63). Furthermore, "[Rule 13(a)] was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." S. Constr. Co. v. Pickard, 371 U.S. 57, 60 (1962). The court believes this is such a case.

7

As stated earlier, Beneficial's eighth cause of action in the Utah action specifically prays for termination of the promissory note as its requested relief. Wilde's current action is therefore an affirmative defense to that claim. If the Utah court were to rule in Beneficial's favor in that action and grant the requested relief regarding the promissory note (termination), Wilde would not be able to bring a separate claim demanding payment on the note because the claim would be barred by the doctrine of issue preclusion. Furthermore, if the Utah court were to rule in Beneficial's favor on the note, any decision regarding the note by this court would also be barred by the doctrine of issue preclusion; precisely the result the policy behind Rule 13(a) sought to achieve.

Furthermore, the factual background supporting each side's claims are based on the same set of circumstances. Both actions rest on whether Beneficial is obligated to continue payment on the promissory note or whether Wilde's alleged breach of the NDA excuses that obligation. Beneficial's Utah action claims that the promissory note is part of an interdependent four-part agreement with the NDA, Consulting Agreement, and Stock Redemption Agreement, making the successful completion of one dependent on the others. (Countercl. Docket No. 6 at 6, ¶ 28.) Whether this is true is of no consequence to this Court. The fact of the matter is the promissory note's inclusion in the *alleged* four-part agreement means Beneficial's defense to the current action is to argue as a defense in Wisconsin the same allegations that form the basis of the Utah complaint: that Beneficial does not have to pay because Wilde breached the NDA. Regardless of the merits of this defense, the respective factual backgrounds are practically indistinguishable, the nature of the claims in both actions are related, the relief requested are opposite sides of the same coin (enforcement or termination of the note) and the law of Utah must be applied in both actions. Therefore, the Seventh Circuit's logical relationship test has most certainly been met.

Having determined that Wilde's action should not proceed in this venue, it must now be determined whether to dismiss Wilde's claim outright or transfer it to the District of Utah.

8

Dismissal is only favored when it is absolutely clear that dismissal will not adversely affect a litigant's interests. Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co., 203 F.3d 442, 444 (7th Cir. 2000). Beneficial has asked this Court to dismiss the claim or, in the alternative, to transfer it to Utah. Wilde has also asked this Court to consider transferring the claim instead of dismissing it. In the interest of justice, Wilde's claim on the promissory note should be transferred to the District of Utah because there is no guarantee that Wilde would now be able to amend his responsive pleading in Utah to add a counterclaim.

The federal transfer statute—28 U.S.C. § 1404(a) (2007)—states, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party—here Beneficial—bears the burden of proving that the transferee district would be *more* convenient than the current district; it is not enough that the transferee district will be *just as* convenient. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986). This can be achieved by setting forth the specific factual circumstances of the case by which the presiding judge can examine the necessary factors. Id.; Mleczek v. Aspen Skiing Co., No. 07-C-0238, slip op. at 1 (N.D. Ill. June 20, 2007). The statutory requirements—the convenience of the parties, the convenience of the witnesses, and the interest of justice—should be viewed as placeholders among a broader set of factors that turn on the factual circumstances of the case. Coffey, 796 F.2d at 209, n. 3. The factors to be considered include the plaintiff's choice of forum, the situs of material events, the availability of compulsory process, the likelihood of a speedy trial, the interest of litigating related disputes together, and the interest of having the case tried by a judge familiar with the applicable state law. Id. at 221; Broadcom Corp. v. Agere Sys., Inc., No. 04-C-066-C, 2004 WL 1176168 at *2 (W.D. Wis. May 20, 2004). Because this evaluation requires "a large degree of subtlety and latitude," the judge has broad discretion in weighing the factors. Coffey, 796 F.2d at 219.

When weighing the convenience of the parties, one must also keep the plaintiff's choice of forum in mind; however, "when the situs of the events is not within the plaintiff's choice of forum, then the factor will only receive little weight." Mleczek, No. 07-C-0238, slip op. at 2; see also Chicago, Rock Island and Pacific R.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955) ("[A plaintiff's choice of forum] has minimal value when none of the conduct complained of occurred in the forum selected by the plaintiff.") (quoting Josephson v. McGuire, 121 F. Supp. 83, 84 (D. Mass. 1954); Anchor Wall Sys., Inc. v. R. & D. Concrete Prods., Inc., 55 F.Supp.2d 871, 874 (N.D. Ill. 1999) ("The weight accorded a plaintiff's choice of forum is further lessened if the chosen forum lacks any significant connection to the claim."). Beneficial is located in Utah. Wilde lives in Wisconsin. The promissory note was issued in Utah and the events leading up to its issuance all took place in Utah. Therefore, Wilde's choice of Wisconsin as a forum should receive little weight. However, the only fact Beneficial has advanced regarding the convenience of the parties is that the four-part agreement was signed in Utah and that it would be more convenient for Christopher Wilde to litigate in Utah because he lives in Nevada. (Def.'s Br. Mot. Dismiss 4.) Beneficial has not said it would be unduly burdened by being forced to litigate this action in Wisconsin. Because Beneficial has not shown that the District of Utah will be more convenient than the Eastern District of Wisconsin it has not met its burden on this matter. Consequently, the convenience of the parties weighs against transfer.

The convenience of the witnesses evens the balance. As Beneficial has noted, thirteen Utah residents have been listed as potential witnesses in the parties' Rule 26 disclosures, while only two Wisconsin residents are listed. (Def.'s Br. Mot. Dismiss Docket No. 21 at 4.) Beneficial has also noted that, because a majority of potential witnesses reside in Utah, there is a greater availability of compulsory process in Utah. Although compulsory process is more accurately categorized as part

of the interest of justice analysis, see Chicago, 220 F.2d at 303, this factor simply helps the convenience of the witnesses factor even the balance.

The interest of justice analysis, which relates to the "effective functioning of the courts, not to the merits of the underlying dispute," may alone be determinative. Coffey, 796 F.2d at 221. Several factors should be considered, including the likelihood of a speedy trial, the interest of litigating related disputes together and the interest of having the case tried by a judge familiar with the applicable state law. Id.

In considering the speedy trial factor, the two most important statistics are the median months from filing to disposition and the median months from filing to trial. Mleczek, No. 07-C-0238, slip op. at 3; see Amoco Oil Co. v. Mobil Oil Corp., 90 F.Supp.2d 958, 962 (N.D. Ill. 2000). The median time from filing to disposition in the Eastern District of Wisconsin is 8.8 months while the median time in the District of Utah is 10.3 months. The median time from filing to trial in the Eastern District of Wisconsin is 28 months and only 25 in the District of Utah. See Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl. However, a November trial date has already been set in the Utah action and, therefore, that action is much closer to resolution. Consequently, this factor weighs in favor of transfer.

The interest of having related disputes litigated together and having a judge familiar with the applicable state law are very persuasive in this case. This exact issue is already pending in Utah in the form of Beneficial's claim for termination of the promissory note, and "related litigation should be transferred to a forum where consolidation is feasible." Coffey, 796 F.2d at 221. Also, the promissory note and the Stock Redemption Agreement—as well the NDA and Consulting Agreement—have chosen Utah as the governing law. These factors alone are enough to sway the balance toward transfer.

11

Finally, the last issue that must be determined is found in the last clause of § 1404(a): the transferee district must be a forum where the claim "might have been brought."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1064) (stating that the transfer power is limited by restricting transfer only to federal districts where the action might have been brought).  There is no doubt that this factor is satisfied here and it need not be discussed at this point.  The reasons why this action might have been brought in Utah should be abundantly clear from this decision.

**IT IS THEREFORE ORDERED** that the defendant's motion to transfer the case is **granted**. Pursuant to 28 U.S.C. § 1404(a), the clerk shall transfer this action to the District of Utah.

**IT IS FURTHER ORDERED** that the plaintiff's motion to dismiss the counterclaim and third-party complaint and the defendant's motion to dismiss are dismissed without prejudice.

Dated at Milwaukee, Wisconsin this 16th day of  July, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge